**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

_____

MELANIE M.,

                                    Plaintiff,

    v.                                                              No. 5:19-CV-571

COMMISSIONER OF SOCIAL SECURITY,          (CFH)

                                  Defendant.

_____

**APPEARANCES:**                                  **OF COUNSEL:**

Olinsky Law Group                       HOWARD D. OLINSKY, ESQ.
250 South Clinton Street, Suite 210
Syracuse, New York 13202
Attorney for plaintiff

Social Security Administration          DANIEL STICE TARABELLI, ESQ.
Office of the General Counsel,         Special Assistant U.S. Attorney
J.F.K. Federal Building
15 New Sudbury Street, Room 625
Boston, Massachusetts 02203
Attorney for defendant

**CHRISTIAN F. HUMMEL
U.S. MAGISTRATE JUDGE**

### MEMORANDUM-DECISION AND ORDER[1]

    Plaintiff Melanie M.[2] brings this action pursuant to 43 U.S.C. § 405(g) seeking review of a decision by the Commissioner of Social Security ("the Commissioner") denying her application for disability insurance benefits. See Dkt. No. 1 ("Compl.").

---

[1] Parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 72.2(b), and General Order 18. See Dkt. No. 5.

[2] In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018 to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify plaintiff by first name and last initial.

1

Plaintiff moves for reversal and remand for further administrative proceedings, and the Commissioner cross moves for a judgment on the pleadings. See Dkt. Nos. 11, 15. For the following reasons, plaintiff's motion is granted, the Commissioner's motion is denied, and the matter is reversed and remanded for further administrative proceedings.

## I. Background

On August 24, 2016, plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits alleging a disability onset date of October 17, 2014. See T. at 167.[3] Plaintiff's application was denied on October 6, 2016. See id. at 104, 108. Plaintiff requested a hearing, see id. at 110-11, and a hearing was held on August 23, 2018, in Syracuse, New York, before Administrative Law Judge ("ALJ") Jude B. Mulvey. See id. at 37-66. On October 11, 2018, the ALJ issued an unfavorable decision. See id. at 7-19. On March 15, 2019, the Appeals Council denied review, making the ALJ's decision the final determination of the Commissioner. See id. at 1. Plaintiff commenced this action on May 15, 2019. See Compl.

## II. Applicable Law

### A. Scope of Review

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1388(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.

---

[3] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner. See Dkt. No. 13. Citations refer to the pagination in the bottom right-hand corner of the administrative transcript, not the pagination generated by CM/ECF.

1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  See Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).  Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)).  The substantial evidence standard is "a very deferential standard of review . . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder would *have to conclude otherwise*."  Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotations marks omitted).  Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion is arguably supported by substantial evidence.  See Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson, 817 F.2d at 986).  However, if the correct legal standards were applied and the ALJ's finding is supported by substantial evidence, such finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted).

**B. Determination of Disability**

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ." 42 U.S.C. § 423(a)(1). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. § 423(d)(1)(A). A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience. See id. § 423(d)(2)(A). Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques." Id. § 423(d)(3). Additionally, the severity of the impairment is "based on objective medical facts, diagnoses[,] or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience." Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the

> [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.
>
> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.
>
> Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (spacing added). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." Barnhart v. Thomas, 540 U.S. 20, 24 (2003). The plaintiff bears the initial burden of proof to establish each of the first four steps. See DeChirico v. Callahan, 134 F.3d 1177, 1180 (2d Cir. 1998) (citing Berry, 675 F.2d at 467). If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere. Id. (citing Berry, 675 F.2d at 467).

### III. The ALJ's Decision

Applying the five-step disability sequential evaluation, the ALJ first determined that plaintiff had not engaged in substantial gainful activity since October 17, 2014, the alleged disability onset date. See T. 12. At step two, the ALJ found that plaintiff had the following severe impairments: "degenerative disc disease and mental impairments." Id. At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. See id. at 13. Before

reaching step four, the ALJ concluded that plaintiff retained the residual functional capacity ("RFC") to

> perform sedentary work as defined in 20 FCR 404.1567(a) except she could not climb ladders, ropes, or scaffolds; could occasionally push/pull, stoop, kneel, and crouch; and could tolerate a low level of work pressure defined as not requiring multi-tasking, detailed job tasks, significant independent judgment, a production pace rate, or the sharing of jobs.

Id. at 15.  At step four, the ALJ determined that plaintiff could not perform any past relevant work.  See id. at 17.  At step five, considering plaintiff's age, education, work experience, and RFC, the ALJ concluded that there were jobs that existed in significant numbers in the national economy that plaintiff could perform.  See id. at 18.  Thus, the ALJ determined that plaintiff had not been under a disability, as defined in the Social Security Act, since the alleged disability onset date.  See id. at 19.

### IV. The Parties Arguments[4]

Plaintiff first argues that the ALJ's RFC determination is not supported by substantial evidence because (a) the ALJ relied on the "vague" opinion of consultative medical examiner Dr. Ganesh and substituted her own judgment in place of medical evidence in reaching her RFC determination, and (b) failed to address how plaintiff's moderate limitations regarding her ability to interact with others would impact her ability to perform work-like functions.  See Dkt. No. 11 at 13-19.  Plaintiff also argues that the ALJ's step five determination is not supported by substantial evidence because, although the ALJ concluded that plaintiff was limited to performing jobs that did not

---

[4] The Court's citations to the parties' briefs refer to the pagination generated by CM/ECF at the headers of the page, not to the pagination of the individual documents.

require detailed job tasks, the ALJ determined that plaintiff could perform jobs with a reasoning level of 3.  See id. at 20-22.  The Commissioner counters that the ALJ's RFC determination is supported by substantial evidence, including Dr. Ganesh's opinion, and argues that plaintiff failed to establish that she suffers from limitations beyond those accounted for in the ALJ's RFC determination.  See Dkt. No. 15 at 4-10.  The Commissioner further avers that the ALJ's RFC determination adequately accounted for plaintiff's moderate mental limitations relating to her anxiety by limiting her work with a "low level of work pressure."  Id. at 10-11.  Finally, the Commissioner contends that the ALJ appropriately relied on the vocational expert's testimony and reached a step five determination that is supported by substantial evidence.  See id. at 11-13.

## V. Discussion

Plaintiff first argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ relied, in part, on the "vague" opinion of consultative medical examiner Dr. Ganesh and failed to rely on competent medical evidence in reaching her RFC determination.  See Dkt. No. 11 at 13, 14.  In particular, plaintiff contends that, although "[t]he ALJ summarized the objective imaging, discussed that [p]laintiff had abnormal medical exams, and addressed that [p]laintiff reported that the treatment methods did not completely alleviate her pain," the ALJ "did not address which evidence indicated that [p]laintiff was capable of sitting six hours and standing or walking for two hours with normal breaks as the regulations define sedentary work."  Id. at 15 (citing T. 16).  Plaintiff also states that Dr. Ganesh's use of the term "moderate" "to describe the level of exertion that [p]laintiff cannot perform is so vague" that it renders

7

the opinion "useless for purposes of evaluating [p]laintiff's [RFC]." Id. at 14. Plaintiff further contends that, because "Dr. Ganesh's opinion was impermissibly vague and there were no other medical opinions regarding plaintiff's physical impairments in the record, the ALJ must have played doctor to determine [p]laintiff's RFC although she did not cite to any specific evidence within the record to support her determination." Id. In opposition, the Commissioner contends that the ALJ's RFC determination was supported by substantial evidence. See Dkt. No. 15 at 4-9. In particular, the Commissioner argues that the ALJ did not "play doctor," as plaintiff suggests; rather, the Commissioner avers, the ALJ properly relied on Dr. Ganesh's opinion along with the objective medical evidence of record and reached an RFC determination supported by substantial evidence. Id. at 8; see id. at 9.

Residual Functional Capacity ("RFC") is defined as "'what an individual can still do despite his or her limitations . . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.'" Pardee v. Astrue, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (quoting Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999) (citation omitted)). "In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." Pardee, 631 F. Supp. 2d at 210 (citing 20 C.F.R. § 404.1545(a)). "Ultimately, '[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment.'" Hendrickson v. Astrue, 5:11-CV-927 (ESH), 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012) (quoting Social Security Ruling ("S.S.R.")

85-15, 1985 WL 56857, at *6).  The RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence."  Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984).

"'In deciding a disability claim, an ALJ is tasked with 'weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole,' even if that finding does not perfectly correspond with any of the opinions of cited medical sources." Tanya S. v. Saul, 410 F. Supp. 3d 436, 445 (N.D.N.Y. 2019) (quoting Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order)).  However, it is well established that ALJs are not medical professionals; therefore, ALJs are "not qualified to assess a claimant's RFC on the basis of bare medical findings."  Id. (internal quotation marks and citation omitted); see Charland v. Comm'r of Soc. Sec., No. 1:13-CV-492 (GTS/WBC), 2016 WL 1117515, at *2 (N.D.N.Y. Mar. 22, 2016) ("[A]n ALJ cannot assess a plaintiff's RFC based on the ALJ's own interpretation of the medical evidence.").  "In other words, there must be substantial evidence to support a finding of functional limitation(s) or lack thereof."  Tanya, 410 F. Supp. 3d at 445.

"Before assessing the claimant's RFC, the ALJ must consider the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." Knighton v. Astrue, 861 F. Supp. 2d 59, 66 (N.D.N.Y. 2012) (citing S.S.R. 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996)).  This requires the ALJ to "make a function by function assessment of the claimant's ability to sit, stand, walk, lift, carry, push, pull, reach, handle, stoop, or crouch."  Walters v. Astrue, No. 11-CV-640 (VEB), 2013 WL 598331, at *3 (N.D.N.Y. Feb. 15, 2013); 20 C.F.R. §§ 4041513(a)(2)(i), 404.1569a(a).  "The claimant's RFC can be expressed in terms of the

exertional levels of work, sedentary, light, medium, heavy, and very heavy only after the function-by-function analysis has been completed." Knighton, 861 F. Supp. 2d at 66 (citation omitted); see Walters, 2013 WL 598331, at *3 ("Once the function-by-function analysis is completed, the RFC may be expressed in terms of exertional levels of work, *e.g.,* sedentary, light, medium, heavy, and very heavy.").

As stated above, the ALJ determined that plaintiff had the RFC to "perform sedentary work as defined in 20 FCR 404.1567(a) except" that plaintiff "could not climb ladders, ropes, or scaffolds; could occasionally push/pull, stoop, kneel, and crouch; and could tolerate a low level of work pressure defined as not requiring multi-tasking, detailed job tasks, significant independent judgment, a production pace rate, or the sharing of jobs." T. at 15. "Sedentary work" is defined as work that

> involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). S.S.R. 96-9p explains that, with respect to sedentary work,

> "Occasionally" means occurring from very little up to one third of the time, and would generally total no more than about 2 hours of an 8-hour workday. Sitting would generally total about 6 hours of an 8-hour workday. Unskilled sedentary work also involves other activities, classified as "nonexertional," such as capacities for seeing, manipulation, and understanding, remembering, and carrying out simple instructions.

1996 WL 374185, at *3 (S.S.A. July 2, 1996); see Knighton, 861 F. Supp. 2d at 67 ("'Sedentary work also generally involves up to two hours of standing or walking and six hours of sitting in an eight-hour workday.'" (quoting Perez v. Chater, 77 F.3d 41, 46 (2d

Cir.1996))). Moreover, it has been held that "'the concept of sedentary work contemplates substantial sitting . . . [and] alternating between sitting and standing may not be within the concept of sedentary work.'" Tanya S. v. Saul, 410 F. Supp. 3d 436, 446 (N.D.N.Y. 2019) (quoting Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984) (additional citation omitted)).

In reaching her RFC determination, the ALJ gave "significant weight to the opinion[] . . . of [Dr.] Ganesh." T. at 17. Dr. Ganesh, a consultative examiner who evaluated plaintiff in September 2016, provided the following medical source statement: plaintiff had "[n]o limitation sitting, standing, and walking. There is a moderate limitation lifting, carrying, pushing, and pulling." Id. at 496. However, as plaintiff points out, the ALJ further stated that she did "not give greater weight to Dr. Ganesh's opinion because [plaintiff's] medical records and reports of pain suggest that she had additional limitations in standing, walking, and performing postural tasks." T. at 17. Although the ALJ specifically qualified plaintiff's ability to perform sedentary work with respect to climbing, pushing and pulling, stooping, kneeling, crouching, and tolerating of a low level of work pressure, the ALJ did not make any specific findings with respect to plaintiff's "additional limitations" in her ability to stand, walk, or perform postural tasks and did not explicitly reconcile her decision with Dr. Ganesh's medical opinion. Id. Indeed, the ALJ's decision is devoid of any analysis specifically explaining or quantifying the level of limitation in plaintiff's ability to stand or walk or the difference between Dr. Ganesh's opinion of "[n]o limitation" and the ALJ's determination of "additional limitations" with respect to these physical functions. Id. at 17, 496. Accordingly, the "Court cannot determine whether or how the ALJ might reconcile [her] conclusion that

11

[p]laintiff could perform sedentary work with the assessments of" Dr. Ganesh when the ALJ's determination and Dr. Ganesh's medical opinion are inconsistent at least with respect to plaintiff's ability to stand and walk and the ALJ did not rely on any other opinion evidence in reaching her conclusion.  Knighton, 861 F. Supp. 2d at 67; see T. at 17, 496.  Moreover, the record does not contain any medical source opinion evaluating plaintiff's limitations in performing postural tasks or the amount of time in which plaintiff is able to sit, stand, walk, or perform postural tasks during an eight-hour workday.  See id. at 15-17.  Thus, the Court concludes that the ALJ failed to provide a function-by-function analysis with respect to plaintiff's standing, walking, or postural limits before concluding that plaintiff could perform sedentary work with the above-stated limitations.  See, e.g., McMullen v. Astrue, No. 5:05-CV-1484 (LEK/GHL), 2008 WL 3884359, at *6 (N.D.N.Y. Aug. 18, 2008) ("[T]he ALJ erred in determining that [the p]laintiff could do light work before fully assessing his work-related abilities on a function-by-function basis.  The ALJ failed to specify . . . the amount of time that [the plaintiff] could sit, walk, and stand.").

      Further, as plaintiff correctly argues, the ALJ did not cite any evidence in support of her conclusion that plaintiff had limitations in standing or walking beyond that opined by Dr. Ganesh.  See id.  Although "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered," Brault v. Soc. Sec. Admin., Com'r, 683 F.3d 443, 448 (2d Cir. 2012), a careful review of the medical evidence of record, namely that evidence cited by the ALJ, establishes that substantial evidence does not support the ALJ's RFC determination.  The ALJ cited plaintiff's MRI, X-Ray, nerve conduction study results, and pain management treatment notes.  See T. at 17.  However, none of

those medical records, either together or separately, establish whether plaintiff could sit for six hours or stand or walk for two hours in an eight-hour workday, as required to perform sedentary work.  See id. at 16; see also T. at 396, 402-05, 435-36, 457, 1716.  Notably, the record is also devoid of any medical opinion evidence concerning any durational limitations or ability to perform postural tasks.  Rather, it appears that the ALJ substituted her own judgment and attempted to interpret the raw medical data, such as the findings of "negligible disc degeneration" in plaintiff's lumbar spine x-rays, in reaching her RFC determination, T. at 402-03—which "the ALJ is precluded from doing."  Sonjah H. v. Berryhill, No. 3:17-cv-1324 (CFH), 2019 WL 936630, at *10 (N.D.N.Y. Feb. 25, 2019); see Westfall v. Comm'r of Soc. Sec., No. 19-CV-6473 (FPG), 2020 WL 3818953, at *3 (W.D.N.Y. July 8, 2020) (holding that "[t]he RFC was . . . not tethered to any medical opinion evidence and as such it [wa]s unclear precisely where the limitations set forth in the RFC came from and why they did not go further" where, in reaching his RFC determination, "the ALJ relied primarily on the bare medical findings by a long list of physicians who offered no official opinion as to what the proper limitations would be[] based on [the p]laintiff's condition." (internal quotation marks and citation omitted)).

    Moreover, the ALJ cited plaintiff's hearing testimony and noted that plaintiff's "report of pain" caused her to afford less weight to Dr. Ganesh's opinion that plaintiff had "[n]o limit" with respect to walking of standing.  T. at 17, 496; see id. at 15.  Despite relying on plaintiff's reports of pain and limitations in reaching her RFC determination, the ALJ also concluded that plaintiff's "statements concerning intensity, persistence, and limiting effects . . . [we]re not entirely consistent with the medical evidence and other

13

evidence in the record . . . ." Id. at 15.  However, the hearing decision provides no analysis as to why the ALJ discredited plaintiff's reports of pain while simultaneously relying on them in declining to credit Dr. Ganesh's opinion with respect to plaintiff's limitations in standing and walking.  See id. at 15-17.  This inconsistency further muddies the waters and prevents the Court from ascertaining how the ALJ reached her RFC determination.  Thus, as plaintiff contends, without "substitut[ing her] own judgment for competent medical opinion," it was impossible, based on this record, for the ALJ to reach the RFC determination contained in the hearing decision.  Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998); see also House v. Astrue, 11-CV-915, 2013 WL 422058, at *4 (N.D.N.Y. Feb. 1, 2013) (holding that remand was necessary where there was no medical source opinion supporting the ALJ's RFC determination); Larkin v. Colvin, 13-CV-0567, 2014 WL 4146262, at *9 (N.D.N.Y. Aug. 19, 2014) (holding that remand was required where the record lacked a broad assessment of the plaintiff's physical functional limitations from an acceptable medical source).

      Similarly, the ALJ's reliance on the portion of Dr. Ganesh's medical source statement stating that plaintiff had "a moderate limitation lifting, carrying, pushing, and pulling," T. 496, does not provide substantial evidence to support the ALJ's RFC determination that plaintiff could "occasionally push/pull."  T. 15.  It is clear that Dr. Ganesh's opinion in this regard is the only basis upon which the ALJ made her determination that plaintiff had limitations in pushing or pulling.  See id. at 15-17.  However, Dr. Ganesh's opinion that plaintiff's limitation in pushing and pulling was "moderate" does not support the ALJ's conclusion that plaintiff could engage in pushing or pulling up to two hours out of an eight-hour workday—because no other evidence of

record establishes her limitations in this regard; thus, this portion of the ALJ's RFC determination is also unsupported by substantial evidence. See Craig R. v. Berryhill, No. 6:18-CV-0630 (LEK), 2019 WL 4415531, at *5 (N.D.N.Y. Sept. 16, 2019) (observing that "the Second Circuit has held that, when compiling an RFC from the record, an ALJ may not rely on opinions that employ the terms 'moderate' and 'mild' absent additional information.") (citing Curry v. Apfel, 209. F.3d 117, 123 (2d Cir. 2000), superseded by regulation on other grounds by 20 C.F.R. § 404.1560(c)(2)); see also Garretto v. Colvin, No. 15-CV-8734 (HBP), 2017 WL 1131906, at *21 (S.D.N.Y. Mar. 27, 2017) (holding that the consulting physician's "use of the word 'moderate' [wa]s vague and provide[d] no support for the ALJ's conclusion that [the] plaintiff [could] engage in [the relevant] activities for six hours out of an eight hour day.").

Accordingly, for the foregoing reasons, the Court concludes that the ALJ's RFC determination is not supported by substantial evidence. Therefore, the matter is remanded for further administrative proceedings, during which the record can be appropriately developed. Because the Court has determined that remand is required based on the reasons stated herein, the Court declines to reach plaintiff's remaining arguments.

### VI. Conclusion

**WHEREFORE**, for the reasons stated above, it is hereby:

**ORDERED**, that plaintiff's motion (Dkt. No. 11) is **GRANTED**; and it is further

**ORDERED**, that the Commissioner's motion (Dkt. No. 15) is **DENIED**; and it is further

**ORDERED**, that this case be **REVERSED AND REMANDED**, pursuant to Sentence Four of 42 U.S.C. § 405(g) for proceedings consistent with this Memorandum-Decision and Order.

**IT IS SO ORDERED.**

Dated: July 28, 2020
      Albany, New York

*[signature]*
Christian F. Hummel
U.S. Magistrate Judge